# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DARION EZELL DEANDRE
PARKER,

                    Petitioner,

v.

BRIAN CAHAK,

                  Respondent.

Case No. 21-CV-1361-JPS

**ORDER**

On November 29, 2021, Petitioner Darion Ezell Deandre Parker filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On January 21, 2025, the Court denied relief on some of Petitioner's claims because they were procedurally defaulted, denied others on the merits, and referred the case to Magistrate Judge Nancy Joseph to conduct an evidentiary hearing on the issue of whether Petitioner's trial counsel, Jessica Bellows ("Bellows"), was constitutionally ineffective during the plea stage of the proceedings. ECF No. 36.

On April 18, 2025, Judge Joseph held an evidentiary hearing and provided a briefing schedule for the parties. ECF No. 44. After the matter was fully briefed, Judge Joseph issued a recommendation to this Court on September 5, 2025, concluding that Petitioner's petition for a writ of habeas corpus be granted. ECF No. 51. On September 17, 2025, Respondent filed an objection to the report and recommendation. ECF No. 52. On September 19, 2025, Petitioner filed an objection to the report and recommendation in regard to the appropriate remedy, along with a response to Respondent's objection. ECF No. 53. Respondent did not file a reply brief in support of his objection and also did not file any response to Petitioner's objection. For

the reasons discussed below, the Court will adopt the report and recommendation and will conditionally grant the petition on the ground that trial counsel was constitutionally ineffective during the plea stage of the proceedings.

1.    **EVIDENTIARY HEARING**

The Court assumes familiarity with the facts of the case and a full discussion of the factual background may be found in the Court's prior order. *See* ECF No. 36. The Court has reviewed the transcript of the evidentiary hearing, Evidentiary Hearing Tr. ("Tr."), ECF No. 45, and finds Judge Joseph's factual findings to be a clear and accurate recitation of the evidence presented at the evidentiary hearing. Thus, the Court recounts the following facts from the recommendation with citations to the hearing transcript.

### 1.1    Petitioner's Testimony

Petitioner testified that he was charged in Milwaukee County Case No. 2014-CF-4284 on October 2, 2014. Tr. at 7. He first met his trial counsel, Attorney Bellows, on October 10, 2014 at his preliminary hearing. *Id.* Petitioner spoke with her outside of the courtroom for a couple of minutes prior to the hearing regarding waiving the preliminary hearing. *Id.* Bellows advised Petitioner to waive the hearing, and he followed her advice. *Id.* at 7–8. Petitioner testified that on October 22, 2014, Bellows visited him while he was in custody at the Milwaukee County pretrial detention facility to provide him with discovery. *Id.* at 9. They spoke about the discovery for about twenty minutes that day. *Id.*

Petitioner testified that he next saw Bellows at the Milwaukee County Jail on January 14, 2015, the day after his final pretrial conference. *Id.* 10. Petitioner testified that he was not present for the final pretrial conference because Bellows waived his appearance without discussing it

with him first. *Id.* at 10–11. Petitioner states that he questioned Bellows as to why she waived his appearance, and the two "kind of bumped heads." *Id.* at 11. Petitioner asked Bellows to withdraw from his case as he was upset about her waiving his appearance without consulting him. I*d.* He testified that he was concerned about how Bellows was handling his case, specifically, she was telling him that he did not have a defense—to which he disagreed—and she was not doing enough work on the case. *Id.* at 13. Petitioner testified that this meeting lasted about thirty minutes. *Id.* at 12.

Bellows moved to withdraw on January 16, 2015, and a hearing was held on the motion on January 20, 2015. *Id.* at 13. Petitioner testified that he spoke with Bellows off the record during the hearing, because he decided to keep her as his counsel. *Id.* at 14. Petitioner stated that he decided to keep Bellows because the trial court judge, Judge Dennis Moroney, told him that if a new attorney was appointed and he did not like this new attorney, he would probably have to retain his own counsel. *Id.* Petitioner testified that he did not want "to get another attorney that was just as bad as her." *Id.* Petitioner stated that his conversation with Bellows lasted approximately two minutes that day, and she assured him that she was going to do her best with his case. *Id.* at 14–15.

Petitioner next saw Bellows on January 22, 2015 when she visited him in-person at the Milwaukee County facility to discuss a plea deal from the state. *Id.* at 15–16. Petitioner testified that the offer presented was to dismiss one armed robbery count and the second degree recklessly endangering safety charges if Petitioner pleaded guilty to one count of armed robbery. *Id.* at 16. Petitioner testified that Bellows did not discuss with him the maximum possible sentence he would receive under this agreement. *Id.* Also, Petitioner had a prior armed robbery conviction from 2011 and a pending revocation at the same time as his 2014 case. *Id.* at 17.

Petitioner testified that Bellows did not discuss with him how the plea would affect his revocation, or whether any sentence he received under the plea agreement would be consecutive or concurrent to his revocation. *Id.* at 17–18.

Petitioner did agree, however, that because he had a prior armed robbery conviction and Judge Moroney also presided over that case, he was aware that the maximum sentence would be about forty years. *Id.* at 16–17. Petitioner testified that Bellows spoke to him about this plea offer for under ten minutes and presented very little information about it. *Id.* at 18–19. Petitioner told Bellows that he was not taking the offer and testified that he rejected it because the maximum penalty of forty years presented too high an exposure. *Id.* at 19. While Petitioner was unhappy with this specific offer, he testified that he never told Bellows that he absolutely wanted to go to trial or that he was not interested in hearing other offers from the state. *Id.*

Petitioner next saw Bellows on the day of his trial, January 26, 2015. *Id.* at 20. Petitioner testified that he was brought to the courthouse early in the morning and was taken to the bullpen, which is a holding cell in the Safety Building. *Id.* at 21. Bellows came to talk to him in the bullpen and told him that the State presented a new plea deal in which it would dismiss the two counts of armed robbery if he pleaded guilty to the second-degree recklessly endangering safety charge. *Id.* at 22–23. Petitioner testified that he asked Bellows to "break it down" for him, meaning to explain how much time he would spend in prison and how much time he would spend on extended supervision. *Id.* at 23. Petitioner testified that Bellows did not explain the possible penalties he would face at sentencing, nor did she tell him how a recklessly endangering safety charge differed from the armed robbery charges. *Id.* Petitioner did, however, have some idea that the penalties might be different, but he did not specifically know—and Bellows

did not give him an estimate of — what his sentence might look like if he took the plea offer. *Id.* at 24. Petitioner testified that this conversation with Bellows lasted about five minutes, which he remembers because there was a clock on the wall outside of the bullpen. *Id.* at 25. He states that Bellows failed to answer any of his questions and walked away while he was still trying to ask her questions. *Id.* at 25–26. He testified that although Bellows received a copy of the proposed plea agreement, she did not give him a copy or review it with him. *Id.* at 26.

Because Judge Moroney previously sentenced Petitioner to two years in custody for one armed robbery, Petitioner testified that he never considered that Judge Moroney would sentence him to 18 years in this case, and Attorney Bellows never warned him about the possibility of a significant jump in sentence. *Id.* at 27. He stated that he would have liked more time to consider the plea offer and if he had more time, he would have accepted the plea and not gone to trial, as he now knows that the maximum time he would have faced under that plea deal was ten years. *Id.* at 27–28.

### 1.2. Attorney Bellows's Testimony

Attorney Bellows testified that she was appointed through the State Public Defender's office to represent Petitioner in Milwaukee County Case No. 14-CF-4284. *Id.* at 63. At the time of her representation of Petitioner, Bellows had been practicing criminal defense law for approximately ten years. *Id.* at 62–63. Bellows testified that her case notes from her file accurately reflect the times and dates she communicated with Petitioner. *Id.* at 68; Ex. 5, ECF No. 44-2. Bellows's case notes indicate that she received Petitioner's case on October 8, 2014, and she first met with him on October 10, 2014 at the preliminary hearing. Tr. 69; Ex. 5. Bellows spoke to Petitioner by telephone on October 15, 2014 and conveyed the first plea offer to him (although she could not recall what this initial offer was) and told him the

next court date. Tr. 69, 72. She also reviewed the discovery that day; thus, she would have spoken to him about that as well. *Id.* at 69. Bellows's notes further indicate that she met with Petitioner on October 22, 2014, and she had short telephone calls with him on October 23 and October 24, 2014. Ex. 5.

Bellows testified that she communicated with the district attorney prosecuting Petitioner's case, Kimberly Schoepp, on January 6, 2015, via email. Tr. 73, Ex. 4, ECF No. 44-1. Schoepp was touching base with Bellows regarding where they stood on going to trial, further plea negotiations, and the status of Petitioner's revocation. *Id.* On January 12, 2015, ADA Schoepp emailed Bellows stating that Bellows never got back to her about negotiations, but that Schoepp understood "that the offer [was] plea to court [sic] 3, dismiss and read in counts 1 and 2 with prison to the court." Ex. 4. Attorney Bellows's notes indicate that she attended the final pretrial conference on January 13, 2015, Ex. 5 at 2, met with Petitioner on January 14, 2015, *id.* at 1, and subsequently drafted and filed a motion to withdraw on January 16, 2015. *Id.* Bellows attended the motion to withdraw hearing on January 20, 2015. Ex. 5 at 1.

Bellows's notes show that she had a short telephone conference with Petitioner on January 22, 2015, Ex. 5 at 2, and also met with him in person that day, *id.* at 1. Bellows prepared for trial on January 23, January 24, and January 25, 2015. *Id.* at 1. Trial began on January 26, 2015. *Id.* at 2. Attorney Bellows testified that it was not uncommon for the State to present a new plea offer on the morning of trial and ADA Schoepp did so in Petitioner's case. Tr. 108. She stated that as soon as she got the new offer, she would have reviewed it with Petitioner while he was in the bullpen. *Id.* at 111. Although Bellows could not recall how long her conversation with Petitioner lasted, she testified that depending on the circumstances, these

types of meetings could last anywhere from a few minutes to half an hour. *Id.* at 112. Bellows testified that in Petitioner's case, she probably would have gone back and forth between the bullpen and the courtroom several times that morning. *Id.* at 113.

While Bellows could not specifically remember the details of her conversation with Petitioner on the morning of trial, she testified that in preparing for the evidentiary hearing, she reviewed her case notes (which are not the same as Exhibit 5). *Id.* at 126–27. Her case notes indicated that the State's offer was dismissal of the two armed robbery counts if Petitioner pleaded guilty to the second-degree recklessly endangering safety count with a maximum initial confinement of five years. *Id.* The State was to remain silent as to whether that sentence was consecutive or concurrent to his revocation. *Id.* at 74. Bellows testified that she was confident that she explained to Petitioner the state's final offer because "it was a drastic difference" that significantly reduced his exposure time for initial confinement and extended supervision. *Id.* at 82–83. She also stated that in a situation like Petitioner's, she would have advised him to take the offer based on the drastic reduction; however, she always told her clients that they had to make the ultimate decision. *Id.* at 83.

Despite this explanation, Bellows testified that Petitioner rejected the offer, which she indicated in her notes by writing "rejected" under the offer. *Id.* at 83, 127. At the start of Petitioner's trial, Judge Moroney acknowledged this final offer and that it had been rejected that morning and that he would no longer accept any plea offers that did not include all of the charges once trial commenced. *Id.* at 116.

**2.    LEGAL STANDARD**

The Federal Rules of Civil Procedure apply in habeas cases. Rule 12, Rules Governing Section 2254 Cases in the United States District Court.

Rule 72(b)(1) allows a district court to refer a case to a magistrate judge, who then "conduct[s] the required proceedings," and "enter[s] a recommended disposition." Fed. R. Civ. P. 72(b)(1). A dissatisfied party has fourteen days from the date the magistrate judge issues the recommendation to file "specific written objections." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b) ("A judge of the court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which an objection is made"). A party must specify "each issue for which review is sought," but need not specify "the factual or legal basis of the objection." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741 (7th Cir. 1999). The district court is required to conduct a de novo review "only of those portions of the magistrate judge's disposition to which specific written objection is made." *Id.* at 739. "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Id.* (citations omitted). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Wees v. Samsung Heavy Indus. Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

3.    **ANALYSIS**

   In considering Judge Joseph's recommendation, the Court is tasked with deciding whether Petitioner has shown that trial counsel was constitutionally ineffective during the plea stage of the proceedings. Courts apply the two-prong test, set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to evaluate the effectiveness of counsel. *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). "The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including" at the plea stage. *Lee v. United States*, 582 U.S. 357, 363 (2017)

(quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) and citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). "A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (citing *Strickland*, 466 U.S. at 687–88; *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); and *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009)). "[A] court does not need to address the *Strickland* prongs in any particular order. If one prong is found to be insufficient, the court need not address the other prong." *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014) (citing *Strickland*, 466 U.S. at 697).

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* 466 U.S. at 687. With respect to this deficiency prong, the Court must bear in mind that "[c]ounsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief." *People v. United States*, 403 F.3d 844, 848 (7th Cir. 2005) (citing *Bell v. Cone*, 535 U.S. 685, 697 (2002); *Strickland*, 466 U.S. at 690; and *Holman v. Gilmore*, 126 F.3d 876, 881–84 (7th Cir. 1997)). "To satisfy the second *Strickland* element, [the petitioner] must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable." *Blake*, 723 F.3d at 879 (citing *Jones*, 635 F.3d at 915 and *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006)).

"Federal habeas review of a claim for ineffective assistance of counsel is 'doubly deferential.'" *Karr v. Sevier*, 29 F.4th 873, 880 (7th Cir.

2022) (quoting *Minnick v. Winkleski*, 15 F.4th 460, 468 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1367 (2022)). Courts "must give 'both the state court and the defense attorney the benefit of the doubt.'" *Id.* (quoting *Burt*, 571 U.S. at 15). "Accordingly, for ineffective assistance claims there is a steep hill to climb, and under § 2254(d), '[t]hat hill is even steeper.'" *Rogers v. Wells*, 96 F.4th 1006, 1011 (7th Cir. 2024) (quoting *Myers v. Neal*, 975 F.3d 611, 620 (7th Cir. 2020) and citing *Strickland*, 466 U.S. at 689–90).

The Court previously found that the Wisconsin Court of Appeals' reasoning on this issue ran afoul of clearly established Supreme Court precedent. ECF No. 36 at 42. The Court also determined that Petitioner was entitled to an evidentiary hearing on the question of whether trial counsel was constitutionally ineffective during the plea stage of the proceedings. The Court turns to assess Judge Joseph's report and recommendation following the evidentiary hearing.

### 3.1 Deficient Performance

Judge Joseph recommended that the Court find Bellows's performance deficient under *Lafler*. ECF No. 51 at 15. More specifically, Judge Joseph found: "that (1) Bellows did not have sufficient time to fully explain the plea offer to [Petitioner] and that (2) she did not convey to [Petitioner] a likely sentence or sentence range that he would face under the morning-of-trial plea offer." *Id.* Respondent did not object to this portion of the recommendation. *See* ECF No. 52 (objection relating to prejudice prong). With no objection to this portion of the recommendation, the Court therefore reviews the recommendation for clear error.

As earlier noted, the Sixth Amendment right to effective counsel "extends to the plea-bargaining process." *Lafler*, 566 U.S. at 162 (citing *Missouri v. Frye*, 566 U.S. 134, 144 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010); and *Hill*, 474 U.S. at 57). In that context, "a reasonably competent

lawyer must attempt to learn all of the relevant facts of the case, make an estimate of the likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." *Brock-Miller v. United States*, 887 F.3d 298, 308 (7th Cir. 2018) (collecting cases); *see also Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered."). Indeed, "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992).

Accordingly, "[a] lawyer's failure to learn the relevant facts and make an estimate of the likely sentence constitutes deficient performance." *Brock-Miller*, 887 F.3d at 309 (citing *Moore v. Bryant*, 348 F.3d 238, 242 (7th Cir. 2003); *Padilla*, 559 U.S. at 368–69; and *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000)). Providing one's client with an inaccurate prediction of a sentence may not necessarily constitute deficient performance depending on the gravity of the inaccuracy, *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005) (citing *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999)), but failing to provide one's client with any prediction at all does. *Brock-Miller*, 887 F.3d at 309 (citations omitted).

Here, under review for clear error, the Court adopts Judge Joseph's well-reasoned recommendation to find counsel's performance deficient under *Lafler*. The Court previously explained that Petitioner had "sufficiently alleged facts that, if true, would entitle him to relief." ECF No. 36 at 44. These facts were that counsel gave Petitioner just minutes to consider the morning-of-trial plea offer and that counsel "failed to advise him of the likely sentence he would receive under that deal before

recommending that he reject it." *Id.* The Court found that "[t]aken as true, those facts suffice to demonstrate deficient performance." *Id.* at 45. As such, Judge Joseph's main task at the hearing with respect to the deficient performance prong was to make a credibility determination about the strength of Petitioner's allegations.

Judge Joseph noted the difficulty in making this determination due to understandably faded memories from an event that occurred over a decade ago. ECF No. 51 at 9. The recommendation recounts Petitioner and Bellows's testimony and identifies where their respective stories differ. *Id.* at 9–12. Bellows, understandably, given the passage of time, did not recall any specifics of her conversation with Petitioner regarding the plea offer on the morning of trial. *Id.* at 12. Bellows testified in terms of her usual practice and what she would have done, rather than what she actually recalled doing. *Id.* In contrast, Petitioner testified unequivocally that Bellows had not explained the plea offer to him the morning of trial. *Id.*

In making the credibility determination, Judge Joseph also weighed the fact that Petitioner has a "personal interest and incentive to couch his testimony in a favorable light." *Id.* at 13. Indeed, a possible reading of the evidence presented is that Bellows followed her usual practice and fully explained the plea offer to Petitioner and that Petitioner is simply lying because he regrets his choice to go to trial. *Id.* Even with this consideration, however, the recommendation finds that there is "more evidence in the record that Bellows did not fully explain the deal to him." *Id.* The recommendation also rejects the State's contention that Petitioner's demand for a speedy trial indicates his desire to go to trial all along. *Id.* at 14

After evaluating Judge Joseph's analysis, the Court is certainly not "left with the definite and firm conviction that a mistake has been made." *See Weeks*, 126 F.3d at 943. As such, reviewing the decision for clear error,

the Court is obliged to adopt the recommendation that Bellows's performance was deficient under *Lafler*.

### 3.2 Prejudice

Judge Joseph recommended that the Court find that Petitioner has established prejudice under the *Lafler* standard. ECF No. 51 at 17. Respondent filed an objection to this portion of the recommendation and asks the Court to hold that Petitioner "failed to prove that he was prejudiced by Attorney Bellows's deficient performance." ECF No. 52 at 2. Petitioner filed a response to this objection and asks that the Court adopt the recommendation that Petitioner was prejudiced as a result of counsel's deficient performance. ECF No. 53 at 4. Petitioner acknowledges that the Court's review of this issue is de novo in light of Respondent's recommendation. *Id.* ("[B]ecause the government objected to the Magistrate Judge's prejudice analysis, the Court reviews that issue de novo.").

Petitioner must demonstrate that counsel's deficient performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Specifically, in a circumstance such as this in which Petitioner contends that Attorney Bellows's deficient performance "led not to an offer's acceptance but to its rejection," Petitioner must show that

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 163–64; *id.* at 166 ("[T]he defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a

conviction on more serious counts or the imposition of a more severe sentence."); *see also Day v. United States*, 962 F.3d 987, 992 (7th Cir. 2020) ("[The petitioner] must prove two things: (1) it is reasonably probable that but for the incompetent advice of his attorneys, he would have accepted the government's renewed plea offer and pleaded guilty; and (2) it is reasonably probable that the judge would have imposed a lower sentence.").

Here, the parties agree that Petitioner made two of the three required showings to establish prejudice. ECF No. 52 at 2. Namely, Respondent concedes that the trial judge would have accepted Petitioner's plea and that the sentence Petitioner received under that agreement would have been less harsh than that which he received for his trial convictions. *Id.* Respondent maintains, however, that Petitioner failed to make the third required showing under *Lafler*, "namely that, but for Attorney Bellows's alleged failure to provide better guidance about the terms of the State's plea offer and anticipated sentence he would receive under that agreement, [Petitioner] would have accepted it." *Id.*

Judge Joseph disagreed with Respondent's contention that Petitioner failed to demonstrate he was prejudiced by Bellows's errors. ECF No. 51 at 16. In reaching that conclusion, the recommendation considered the following facts: (1) Petitioner had previously pled guilty to an armed robbery; (2) Petitioner testified that if Bellows had explained the plea deal to him and he had time to consider it, he would have taken the plea deal and not gone to trial; (3) Petitioner testified that he did not want to go to trial and only rejected the initial plea deal because the 40-year exposure he faced was too great; and (4) Petitioner testified that even believing he had a 50/50 chance of success at trial, he would not have rolled the dice to go to trial had he faced only ten years in prison. *Id.* at 16–17.

Respondent argues that Petitioner's testimony was inconsistent in regard to his probability calculations that fueled his decision whether to reject the State's plea offer. ECF No. 52 at 2. Specifically, Respondent highlights the following testimony:

> (1) that he calculated his risk of losing at trial to be 50%; (2) that he rejected the State's original offer to plead guilty to one count of armed robbery because the 40-year prison exposure he faced was too much risk to bear, even assuming a 50% chance of being convicted of all charges at trial; but that (3) conversely, he did not view a potential 10-year prison sentence as too much risk to bear, even assuming the same 50% chance of being convicted of all charges at trial.

*Id.* at 3 (citing ECF No. 45 at 58–59). Respondent argues that Petitioner's previous guilty plea "says nothing about whether he was willing to plead guilty in this case," and that he has not explained "why he refused to accept the State's revised plea offer that carried a maximum total potential sentence of 10 years…." *Id.* at 4.

Respondent's objection cites to no authority in support of his argument aside from the general *Strickland* standard. In contrast, Petitioner's response provides ample case law in support of the argument that he would have accepted the plea and was therefore prejudiced by counsel's deficient performance. *See* ECF No. 53 at 11–12 (citing *Magana v. Hofbauer*, 263 F.3d 542, 551 (6th Cir. 2001 ) (crediting petitioner's testimony that he would have accepted the plea offer if he had known his true sentencing exposure given the "large disparity in prison sentences" under the proposed plea and the sentence he received after trial); *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (finding that the large disparity between actual sentence and sentence that defendant's counsel represented he would); *Julian v. Bartley*, 495 F.3d 487, 499 (7th Cir. 2007) (finding prejudice based on petitioner's testimony that he would have insisted on

going to trial but for counsel's deficient performance in incorrectly informing him about the potential penalties he faced, the history of plea discussions in the case, and the nature of the misinformation which was "precisely the kind likely to impact a plea decision")).

The Court acknowledges that there is no way in this case to know for certain what Petitioner would have done if adequately counseled on the plea offer on the morning of trial. However, that is not the question before the Court in terms of the prejudice analysis. Petitioner "need not demonstrate that his counsel's deficient conduct more likely than not altered the outcome in the case. *Julian*, 495 F.3d at 500. Instead, he "need only demonstrate that the chances of prejudice were better than negligible." *Id.* The Court agrees with Judge Joseph's determination that Petitioner has met that threshold. Respondent's argument that Petitioner has failed to explain why he did not accept the plea agreement on the morning of trial wholly misses the mark. Petitioner does not contend that he wanted to accept the plea offer *despite* counsel's advice. Petitioner contends instead that he did not plead because Bellows failed to adequately advise him on the proffered plea. Respondent's objection in this regard is without merit.

Further, the exposure that Petitioner faced going to trial was significant compared to the maximum sentence he could have received under the plea agreement. In *Julian,* the Seventh Circuit found it "hard to imagine [] that any reasonable defendant would be willing to risk thirty-seven years for the remote chance of acquittal." *Id.* at 499. Here, the Court finds it similarly hard to imagine that Petitioner would have been willing to risk eighty years (the difference between the ten the State offered and the ninety years to which he could have been sentenced after trial) for the

chance of acquittal.[1] As such, the Court adopts Judge Joseph's recommendation and finds that Petitioner has established prejudice under the *Lafler* standard.

In sum, Petitioner has shown both that counsel performed deficiently in the plea negotiations and that he suffered prejudice as a result. Thus, the Court is therefore obliged to adopt Judge Joseph's recommendation to grant the petition for a writ of habeas corpus on this basis. The Court addresses the appropriate remedy in turn.

**4.    REMEDY**

Judge Joseph did not make a specific recommendation as to the appropriate remedy. ECF No. 51 at 18 ("I have not been tasked with recommending a remedy for the constitutional violation, nor have the parties briefed the issue."). The recommendation did, however, note that "should the chosen remedy be specific performance of the original plea agreement, the state should be ordered to reoffer the plea agreement…." *Id.* Petitioner objected to the recommendation's "narrow construction of the appropriate remedy." ECF No. 53 at 15. Respondent did not file any response to Petitioner's argument.

The Court appreciates Judge Jospeh's guidance regarding an appropriate remedy; however, the recommendation specifically acknowledged that she was not tasked with recommending a remedy and that the parties had yet to brief the issue. As such, the Court does not view the discussion of the appropriate remedy as a recommendation that this

---

[1] At trial, Petitioner faced a total maximum penalty of ninety years—one class G felony (second degree recklessly endangering safety) carrying a term of imprisonment not to exceed 10 years, and two class C felonies (armed robbery with threat of force), each carrying a term of imprisonment not to exceed 40 years. *See* WIS. STAT. §§ 941.30(2), 943.32(2) and 939.50(3)(c) and (g)). Under the morning-of-trial plea offer, he faced a maximum penalty of just ten years. *See* WIS. STAT. §§ 941.30(2) and 939.50(g).

Court reviews under Rule 72. Nonetheless, in light of the Court's finding above that Petitioner was deprived of constitutionally adequate representation during the plea stage, the Court therefore must independently assess the appropriate remedy.

The Supreme Court has recognized that "a court has broad discretion in conditioning a judgment granting habeas relief." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). The appropriate remedy can depend on the type of constitutional violation at issue. "Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" *Lafler*, 566 U.S. at 170 (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)). "[A] remedy must 'neutralize the taint' of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Id.* (citations omitted). If "the sole advantage a defendant would have received under the plea is a lesser sentence," and the defendant shows a reasonable probability that he would have accepted the plea but for trial counsel's deficient performance, then "the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." *Id.* at 170–71.

In *Lafler*, the district court ordered specific performance of the original plea agreement. *See Cooper v. Lafler*, No. 06-11068, 2009 WL 817712, at *9 (E.D. Mich. Mar. 26, 2009) ("[T]he most appropriate remedy is to grant a writ of habeas corpus ordering specific performance of Petitioner's original plea agreement, for a minimum sentence in the range of fifty-one to eighty-five months."). The Supreme Court, however, disagreed and found that the best way to remedy the constitutional violation, while not

granting the petitioner a potential windfall by limiting the discretion the state trial court would have otherwise had to reject the plea offer, was to order the State to "reoffer the plea agreement." *Lafler*, 566 U.S. at 174. This would allow the state trial court the ability to "exercise its discretion to accept the plea and vacate the convictions entirely, vacate only some of the convictions and resentence the defendant accordingly, or leave both the original convictions and sentence undisturbed." *Id.*

More recently, however, a district court found that the Supreme Court in *Lafler* did "not address specifically how to structure the remedy when the defendant has already served more time than the lapsed plea offer required. *Green v. Att'y Gen., State of Fla.,* 193 F. Supp. 3d 1274, 1288 (M.D. Fla. 2016). In *Green*, the district court recognized that the petitioner had already served over five years more than the plea agreement contemplated and that "[n]o court [was] able to turn back the clock and effectuate a twelve-month sentence." *Id.* The State in that case proposed that, at most, it should have been "required to offer [the petitioner] a sentence of time served because reinstating the original plea bargain would have unspecified ancillary consequences that could result in an improper windfall to [the petitioner]." The court agreed and directed the State to effectuate a resentencing to time served. *Id.*

A district court that grants a petition for a writ of habeas corpus may nonetheless "delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court." *Hilton,* 481 U.S. at 775. "Consequently, when a district court issues a conditional writ of habeas corpus, the court 'retains jurisdiction to determine whether a party has complied with the terms of [the] conditional order.'" *Jensen v. Clements*, No. 11-C-803, 2017 WL 5712690, at *3 (E.D. Wis. Nov. 27, 2017), *aff'd sub nom. Jensen v. Pollard*, 924 F.3d 451

(7th Cir. 2019) (quoting *Phifer v. Warden, U.S. Penitentiary, Terre Haute, Ind.*, 53 F.3d 859, 861 (7th Cir. 1995)). When a State fails to correct the constitutional violation within the time established by the district court, "the consequence ... is always release." *Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring). But "[o]nce ... the habeas writ [is] complied with, ... the district court [loses] jurisdiction over the case." *Hudson v. Lashbrook*, 863 F.3d 652, 656 (7th Cir. 2017).

Here, Petitioner argues that he has "already served twice the *maximum* sentence he could have received under that plea agreement" ECF No. 53 at 18 (emphasis in original). Petitioner further argues that this case is not a matter of speculation on what the trial judge might have done or might do on resentencing because even if Petitioner had received the "highest penalty allowed, his period of initial confinement would have ended years ago." *Id.* Petitioner asks the Court to grant his petition for habeas relief and to order that he be released from custody unless, within thirty days of the date of the Court's order, his convictions for Armed Robbery in Milwaukee County Case Number 2014CF4284 are vacated and his sentence on the remaining Second Degree Recklessly Endangering Safety charge is amended to time served. *Id.* at 20.

Notably missing is the State's position on an appropriate remedy under these circumstances. Because Respondent failed to respond to Petitioner's argument, the Court does not have the benefit of any briefing to meaningfully assess what, if any, ancillary consequences may arise from granting Petitioner's proposed remedy. The State had every opportunity to weigh in on this issue; however, it chose not to do so.

The Court finds that simply ordering the State to reoffer the plea agreement will not neutralize the taint of the constitutional violation. After trial, Petitioner was sentenced to thirty-two years, consisting of eighteen

Case 2:21-cv-01361-JPS    Filed 10/27/25    Page 20 of 24    Document 54

years of incarceration followed by fourteen years of extended supervision. ECF No. 51 at 16. If Petitioner had accepted the plea offer the morning of trial, his total maximum sentence would have been ten years; however, his period of initial confinement could not have been longer than five years. ECF No. 53 (citing Wis. Stat. § 941.30(2) (listing second-degree recklessly endangering safety as a Class G felony); § 973.01 ("For a Class G felony, the term of confinement in prison may not exceed 5 years.")). The Court therefore agrees with Petitioner that if he had accepted the plea, and even if the trial court sentenced him to the maximum sentence allowed by law, Petitioner's period of initial confinement would have ended years ago.[2] As such, the Court finds that justice requires that the remedy be more than simply ordering the State to reoffer the plea agreement.

The Court does not find that Petitioner would be granted a windfall if he receives his requested relief of time served. Importantly, Respondent has conceded that the trial judge would have accepted Petitioner's plea and that the sentence Petitioner received under that agreement would have been less harsh than that which he received for his trial convictions. ECF No. 52 at 2. There is therefore no suggestion in this case, unlike in *Lafler*, that the requested remedy would take away the discretion of the sentencing judge.[3]

---

[2]The Court notes that neither party has provided precisely how long Petitioner has been in custody on the relevant charges. However, public records suggest he has been in custody since at least October 2014. *See* Wisconsin Circuit Court Access, *State of Wisconsin v. Darion Ezell Parker,* Milwaukee County Case No. 2014CF4284. Respondent has not objected to or corrected Petitioner's assertion regarding his time in custody. The Court is therefore satisfied that Petitioner has served over ten years of initial confinement.

[3]The Court acknowledges that it is slightly unclear how Petitioner's revocation case would affect these proceedings. Petitioner's filings indicate that he received two years of additional confinement for his revocation. ECF No. 47 at 16. However, again, Respondent had the opportunity to explain any ancillary

Thus, based on these facts, the Court finds that simply ordering the State to reoffer the plea agreement would not neutralize the constitutional violation in this case. The Court will therefore grant Petitioner the relief he seeks and will conditionally grant his petition for habeas relief. The Court will order that Petitioner be released from custody unless, within thirty days of the date of this Order, his convictions for Armed Robbery in Milwaukee County Case Number 2014CF4284 are vacated and his sentence on the remaining Second Degree Recklessly Endangering Safety charge is amended to time served.

5. **CONCLUSION**

For the reasons discussed above, the Court will adopt Judge Joseph's report and recommendation and will conditionally grant Petitioner's petition for a writ of habeas corpus on the ground that trial counsel was constitutionally ineffective during the plea stage of the proceedings. As discussed in detail in the Court's prior order, all remaining claims were denied because they were either procedurally defaulted or because the Court denied the claims on the merits. *See* ECF No. 36. Having addressed all of Petitioner's claims, the Court will dismiss this case and enter judgment accordingly.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." To obtain a certificate of appealability, the Petitioner must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), by establishing that

---

consequences that would arise from Petitioner's requested remedy; Respondent failed to do so. Even with the additional two years of confinement for the revocation charge, it still appears to the Court that Petitioner has already been in custody longer than he would have been under the plea agreement.

"reasonable jurists could debate whether (or, for that matter, agree that) the amended petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted).

For the grounds denied and for the reasons discussed in the Court's prior order, ECF No. 36, no reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. The Court will, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Magistrate Judge Nancy Joseph's report and recommendation, ECF No. 51, be and the same is hereby **ADOPTED**;

**IT IS FURTHER ORDERED** that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be and the same is hereby **CONDITIONALLY GRANTED** on Ground Three, that trial counsel was constitutionally ineffective during the plea stage of the proceedings, such that the State is required to effectuate a resentencing; the Court will order that Petitioner be released from custody unless, within thirty days of the date of this Order, his convictions for Armed Robbery in Milwaukee County Case Number 2014CF4284 are vacated and his sentence on the remaining Second Degree Recklessly Endangering Safety charge is amended to time served;

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**; and

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of October, 2025.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

---

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.